## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Julie Dalton, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Case No.: 23-cv-2126(DWF/DLM) |
| v. | |
| Home Depot U.S.A. d/b/a Home Depot, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION……………………………………………………………4

II.     THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT…………..5

A.      LEGAL STANDARD GOVERNING FINAL APPROVAL OF THE
        SETTLEMENT…………………………………………………………......6

B.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE IN LIGHT
        OF THE FACTORS IDENTIFIED RULE 23 (E) AND *VAN HORN*…………….8

        1.      The Rule 23 (e) Factors Favor Final Approval……………………………..8

        2.      The *Van Horn* Factors Favor Final Approval………………………………8

                a.      The Merits of the Case Weighed Against the Terms of the
                        Settlement…………………………………………………………...9

                b.      The Defendant's Financial Condition……………………………...10

                c.      The Complexity and Expense of Further Litigation………………11

                d.      The Amount of Opposition to the Settlement………………………12

C.      CERTIFICATION OF THE CLASS AND APPOINTMENT OF COUNSEL
        REMAIN APPROPRIATE……………………………………………………..13

D.      THE NEGOTIATED ATTORNEY'S FEES, COSTS AND SERVICE AWARD
        ARE FAIR AND REASONABLE……………………………………………..13

        1.      Legal Standard Governing Final Approval of Attorney's Fees…………...13

        2.      Courts Favor Negotiated Attorney's Fees………………………………...17

        3.      The Johnson Factors……………………………………………………....17

        4.      The Benefit Conferred Supports the Requested Fee and Expense
                Amount……………………………………………………………………18

        5.      The Risks Faced by Plaintiffs' Counsel Support the Requested Fee and
                Expense Amount…………………………………………………………19

6.      The Novelty and Difficulty of the Issues Support the Requested Fee and Expense Amount……………………………………………………..20

7.      The Skill of Plaintiffs' Counsel, Defendant's Counsel, and the Efficiency in Handling the Case Supports the Requested Fee and Expense Amount…….20

8.      The Reaction of the Class and Significant Disability Rights Stakeholders Stockholders Supports the Requested Fee and Expense Amount………….21

9.      A Comparison to Similar Cases Supports the Requested Fee and Expense Amount………………………………………………………………...22

10.     The Service Award Sought For Ms. Dalton Is Fair And Reasonable…….22

III.    CONCLUSION……………………………………………………………..24

## I.    <u>INTRODUCTION</u>

Plaintiff brought this action to ensure that Defendant's POS terminals and cash-back feature are safely, privately, independently, fully, and equally accessible to blind or other vision-impaired individuals. The relief afforded by the settlement agreement does just that.

As the Settlement Agreement confirms, Defendant will update/replace the hardware and software associated with the payment terminals in its U.S. stores to enable a user to hear an audio readout of on-screen prompts associated with the cash-back feature of Defendant's payment terminals and corresponding use of a tactile keypad, other tactile feedback option, or other ADA-compliant option for cash-back transactions. *See* Settlement Agreement, attached to the Declaration of Patrick W. Michenfelder, Esq. submitted concurrently herewith ("Michenfelder Decl."). Class Counsel's efforts and Defendant's cooperation resulted in an early, positive resolution that benefits a nationwide class of blind and visually impaired individuals who will now be able to utilize Defendant's POS terminals safely, privately, and independently -- just as Defendant's sighted customers can.

***Notice Has Been Provided:*** Within 15 days of the Court's October 6, 2025, Preliminary Approval Order (ECF 48), the undersigned counsel caused class action settlement notice to be published on a settlement website located at https://homedepotadapossettlement.com/ ("the Settlement Website"). The Settlement Website provided access to copies of Plaintiff's class action Complaint, Motion for Preliminary Approval of Class Action Settlement, and all documents filed in support of the named Plaintiff's Motion for Preliminary Approval of Class Action Settlement,

together with instructions to those who wish to object to the settlement. (*See* Michenfelder Decl.).

Also within 15 days of the Court's Preliminary Approval Order (ECF 48), the undersigned counsel requested that the following organizations publish notice immediately in their respective electronic newsletters and social media accounts: American Council of the Blind, American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation Fighting Blindness, Guide Dogs for the Blind, National Association of Blind Merchants, National Council on Disability, and National Federation of the Blind. *Id*.

***There Have Been No Objections to The Settlement:*** Plaintiff's Counsel subsequently received communication from and communicated with seven members of the settlement class asking for details as to the process; true and correct copies of which are attached to the Michenfelder Declaration as Exhibit A. None of these individuals, or any other individuals or entities, have objected in any way to the settlement. (*See* Michenfelder Decl.).

For the reasons discussed below, the excellent result achieved here, won on a nationwide basis, supports Plaintiffs' request for final certification of the class, appointment of class counsel, and approval of the Settlement Agreement, including attorney's fees in the amount of $65,000, from which a $1,000 service award is payable to Ms. Dalton.

## II.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

"A class action cannot be dismissed or settled without the approval of the district court." *Cleveland v. Whirlpool Corp.*, No. 0:20-cv-01906-WMM-JFD, 2022 WL 2256353, at *4 (D. Minn. June 23, 2022). The Court's role in reviewing a class settlement is "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017).

### A.    <u>LEGAL STANDARD GOVERNING FINAL APPROVAL OF THE SETTLEMENT.</u>

Fed. R. Civ. P. 23(e)(2) provides that:

the court may approve [a proposed class-action settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arms'-length;

(C) the relief provided for the class is adequate, taking into account:

    i. the costs, risks, and delay of trial and appeal;

    ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    iii. the terms of any proposed award of attorney's fees, including timing of payment; and iv. any agreement required to be identified under Rule 23(e)(3); and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In determining whether a class-action settlement should be approved as being a fair, reasonable, and adequate resolution of the case, the Eighth Circuit has indicated that district courts should also consider the following factors (the "*Van Horn* factors"):

(a) the merits of the plaintiffs' case weighed against the terms of the settlement;

(b) the defendant's financial condition;

(c) the complexity and expense of further litigation; and

(d) the amount of opposition to the settlement. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (listing factors from *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988)).

The law strongly favors resolving litigation through settlement, particularly in the class action context. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); *Liddell v. Bd. Of Educ.*, 126 F.3d 1049, 1056 (8th Cir. 1997). "Settlement agreements are presumptively valid, particularly where 'a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.'" *In re Zurn*, 2013 WL 716088, at *6 (cleaned up); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013); *Phillips v. Caliber Home Loans, Inc.*, No. 19-CV2711 (WMW/LIB), 2022 WL 832085, at *3 (D. Minn. Mar. 21, 2022).

The single most important factor in determining whether a settlement is fair, reasonable, and adequate "is the balance of the settlement terms against the strength of the plaintiff's case." *In re Airline Ticket C'mm'n Antitrust Litig.*, 953 F. Supp. 280, 282

(D. Minn. 1997) (citing *Van Horn*, 840 F.2d at 607). Courts also give "great weight" to the opinions of counsel and are "entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987).

**B.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE IN LIGHT OF THE FACTORS IDENTIFIED RULE 23(e) AND *VAN HORN*.**

**1.    The Rule 23 (e) Factors Favor Final Approval.**

The factors set forth in Rule 23(e) are the same factors that must be considered in granting preliminary approval of a class-action settlement. In an effort to avoid needless repetition, the discussion of those factors will not be repeated here but is instead incorporated by this reference. (*See* ECF 44, Plaintiff's Memorandum in Support of Motion for Preliminary Approval, at pages 25-31). In granting preliminary approval of the Settlement, the Court concluded that the Rule 23(e) factors supported preliminary certification of the class and that it would likely be able to approve the Settlement.  There has been no change in circumstances that would warrant the Court reaching any other conclusion now.

**2.    The *Van Horn* Factors Favor Final Approval.**

As mentioned *supra*, the Eighth Circuit has indicated that in determining whether a class-action settlement should be approved as being a fair, reasonable, and adequate resolution of the case, district courts should consider the following "Van Horn factors" in addition to those set forth in Rule 23 (e): (a) the merits of the plaintiffs' case weighed against the terms of the settlement; (b) the defendant's financial condition;   (c) the

complexity and expense of further litigation; and (d) the amount of opposition to the settlement. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (listing factors from *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). For the reasons that follow, the Court should determine that the "Van Horn factors" support final certification of the class and approval of the settlement.

a. **The Merits of the Case Weighed Against the Terms of the Settlement.**

Balancing the merits of the case against the terms of the Settlement supports final approval. Plaintiff brought this action to ensure that Defendant's POS terminals and cash-back feature are safely, privately, independently, fully, and equally accessible to blind or other vision-impaired individuals. The relief afforded by the settlement agreement does just that. As the Settlement Agreement confirms, Defendant will update/replace the hardware and software associated with the payment terminals in its stores located in the United States to enable a user to hear an audio readout of on-screen prompts associated with the cash-back feature of Defendant's payment terminals and corresponding use of a tactile keypad, other tactile feedback option, or other ADA compliant option for cash-back transactions. *See* Settlement Agreement ¶ 5 (Michenfelder Decl., Ex. B).

Defendant, a large corporation represented by unquestionably competent counsel, interposed an answer in this case that advanced seventeen (17) separate affirmative and other defenses. In addition to the risk Plaintiff and the putative class faced that one or more of Defendant's defenses might have been successful, the delay associated with trial and appeal would threaten to delay the ability to obtain meaningful relief for the class by years.

9

Taking depositions, briefing and arguing summary judgment motions, briefing motions in limine, preparation of witnesses, conducting a trial, and briefing any appeals would also threaten to substantially impact the ability of the parties to settle the case: by resolving the case promptly, the parties were able to entirely avoid the risk that increased costs and attorney's fees might hinder the ability to get this matter resolved.

The Settlement thus ensures a significant achievement for the Settlement Class while allowing the Settlement Class to avoid further risks, costs, uncertainties, and delays. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("In sum, the settlement provides substantial and immediate benefits to the class. Thus, weighing the uncertainty of relief against the immediate benefit provided in the settlement ... we conclude that this factor weighs in favor of approving the settlement.") (internal quotation marks and brackets omitted); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 1013, 1017–18 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the class and weighed in favor of final approval); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (the Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement.").

### b.    The Defendant's Financial Condition.

Defendant has the financial ability to litigate this case to the greatest extent possible and to comply with its financial obligations under the Settlement. This factor, therefore either weighs in favor of the Settlement or is neutral. *See e.g.*, *In re UnitedHealth Grp. Inc. S'holder Deriv. Litig.*, 631 F. Supp. 2d 1151, 1157–58 (D. Minn. 2009) (finding that

defendants' financial condition weighed in favor of settlement even where one or more defendants could possibly pay more); *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (finding this factor neutral where defendant was "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation.").

### c.    The Complexity and Expense of Further Litigation.

Complex litigation like class actions "place[s] an enormous burden of costs and expense upon parties." *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015). Litigating this case would involve extensive pre-trial proceedings, including document discovery; written discovery (interrogatories and requests for admission); depositions; preparation of expert reports; the negotiation and completion of witness and exhibit lists; and extensive briefing on motions to dismiss, for summary judgment, motions to strike experts, and motions in limine. If Defendants' motions to dismiss and for summary judgment were denied, trial would involve extensive preparation, all of which would have greatly increased costs for the parties. Following trial, any judgment would be subject to post-trial motions and a likely appeal, injecting further risk and uncertainty into the equation. Significantly, all of this would be done in pursuit of relief that the Settlement Agreement already ensures that the Class will receive, and while exposing the Class to the risk of an unfavorable outcome at any of these stages that could be fatal to the litigation. "Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk of trial" and thus "weigh[s] in favor of the proposed Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008)

### d.    The Amount of Opposition to the Settlement.

The Eighth Circuit has established "the amount of opposition to the settlement" as an important factor for courts to consider in determining whether a proposed settlement is fair, reasonable, and adequate. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (finding the fact that "the amount of opposition to the settlement [was] minuscule" supported approval of the settlement). A lack of objections to a proposed class settlement "strongly weighs in favor of approving the Settlement." *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc*., No. 0:14-CV-00786-ADM-TNL, 2017 WL 2574005, at *4 (D. Minn. June 14, 2017); *In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL No. 17-2795, 2020 WL 7133805, at *7 (D. Minn. Dec. 4, 2020) (only eight objectors out of 17.2 million class members proved "little opposition to the Settlement"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2017 WL 2481782, at *4 (N.D. Cal. June 8, 2017) (absence of any objections from institutions means that "the inference that the class approves of the settlement is even stronger").

In this case, notice was provided to the class via (a) the Settlement Website; (b) to substantial stake-holders in this space: the American Council of the Blind, American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation Fighting Blindness, Guide Dogs for the Blind, National Association of Blind Merchants, National Council on Disability, and National Federation of the Blind. As set forth above, counsel has not heard from any individual or entity representative with any objections to the Settlement. This factor, therefore, favors final approval.

C.    **CERTIFICATION OF THE CLASS AND APPOINTMENT OF COUNSEL REMAIN APPROPRIATE.**

No circumstances have arisen suggesting that the reasons underlying the Court's ruling preliminarily certifying the settlement class, designating Plaintiff as class representative, and appointing class counsel should be called into question or revisited. Accordingly, for the reasons set forth in the Plaintiff's preliminary approval motion,[1] Plaintiff asks that the Court certify the Settlement Class, designate Plaintiff as class representative, and appoint the undersigned as class counsel.

D.    **THE NEGOTIATED ATTORNEY'S FEES, COSTS, AND SERVICE AWARD ARE FAIR AND REASONABLE.**

1.    **Legal Standard Governing Final Approval of Attorney's Fees.**

Under Federal Rule of Civil Procedure 23(h), a district court supervising a class action may "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Attorney fee awards in civil rights cases are "governed by the same standards which prevail in other types of equally complex federal litigation…" *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 4 (comparing complex civil rights case with complex antitrust litigation for purposes of awarding attorneys' fees).

---

[1] Once again, in an effort to avoid needless repetition, the pertinent discussion will not be repeated here but is instead incorporated by this reference. (*See* ECF 44, Plaintiff's Memorandum in Support of Motion for Preliminary Approval).

As courts within this District have observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." *In re Monosodium Glutamate Antitrust Litig.*, No. 00-md-1328 (PAM), 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003) (citing *Blum v. Stetson*, 465 U.S. 886, 896-97 (1984)). *See also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) ("[A] financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid. To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citations omitted).

Here, the parties' agreement provides for an award of attorney's fees. In addition, the Americans with Disabilities Act authorizes the Court to award "the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses and costs …" 42 U.S.C. § 12205.

Although the ADA's statutory text provides the Court with discretion as to the award of attorney's fees, courts have made it clear that a prevailing party will normally be entitled to attorney's fees. *See, e.g., Kline v. City of Kan. City, Mo., Fire Dep't*, 245 F.3d 707, 708 (8th Cir. 2001) ("A prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances."); *Doe v. Busbee*, 684 F.2d 1375, 1378 (11th Cir. 1982); *Ellis v. Copperfield Invest. & Devel. Co.*, 23 Fed.Appx. 762, 763 (9th Cir. 2001) (In an

14

ADA action, a "prevailing party will normally be entitled to attorneys' fees unless special circumstances would make an award unjust"). Consequently, recovery of fees is "the rule rather than the exception." *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989).[2]

A plaintiff is a "prevailing party" if "they succeed on any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit." *Hensley*, 461 U.S. at 433. "To 'succeed' . . . , a party must achieve a court-ordered change in the legal relationship between the plaintiff and the defendant." *People Against Police Violence*, 520 F.3d 226 (3d. Cir. 2008) (quotation marks and citations omitted). When a court approves a settlement agreement and retains jurisdiction to enforce its terms, there is a judicially-sanctioned material alteration in the legal relationship of the parties sufficient to confer prevailing party status on the plaintiff under fee-shifting statutes, such as the

---

[2] Decisions making it clear that a successful Plaintiff is entitled to an award of reasonable attorney's fees in all but the most exceptional circumstances are no surprise. Congress enacted the fee-shifting provisions of civil rights statutes "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted). "If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam); *Disabled Patriots of America v. Reserve Hotel, Ltd.*, 659 F. Supp.2d 877, n. 10 (N.D. Ohio, 2009):

> "Civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain … not to award counsel fees in cases such as this would be tantamount to repealing the Civil Rights Act itself by frustrating its basic purpose. The analogous ADA attorney's fees provision, 42 U.S.C. § 12205, serves the same purpose."

ADA. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006), *cert. denied*, 549 U.S. 881 (2006).

In addition to fees compensating for the value of work done to date, prevailing civil rights plaintiffs are also entitled to recover future monitoring attorney's fees. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working…are compensable services. They are essential to the long-term success of the plaintiff's suit."); *Jenkins v. State of Mo.*, 127 F.3d 709 (8th Cir. 1997) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*) (monitoring fees are available where they are "inextricably intertwined" with the litigation that yielded the remedy and "useful and of a type ordinarily necessary" to "secure the result obtained in the underlying litigation." "Reimbursement for post-judgment litigation fees can be as important for pre-judgment fees … in suits for long-term injunctive relief … the remedy can unfold in phases over many years."); *Association for Ret. Citizens v. Schafer*, 83 F.3d 1008 (8th Cir. 1996) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)) ("Complex civil rights cases seldom end with the grant of a permanent injunction. The injunction must be implemented, that process must be monitored, and lingering or new disputes over interpretation of the decree must often be presented to the court for resolution. These functions take time and effort by the prevailing party's attorney. Therefore, it is generally accepted that prevailing plaintiffs are entitled to post-judgment fee awards for legal services necessary for reasonable monitoring.").

### 2.    Courts Favor Negotiated Attorney's Fees.

The U.S. Supreme Court has endorsed the consensual resolution of the amount of attorneys' fees to be paid to plaintiffs' counsel in representative litigation. *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation. Ideally … litigants will settle the amount of a fee."); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982*)* ("[T]he court's intrusion upon what is otherwise a private consensual agreement … must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors best understood by negotiating parties should determine quantum of attorneys' fees); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (affording "substantial weight to a negotiated fee amount"). Here, the requested attorney's fees award has been agreed to by well-represented parties via arm's-length negotiations.

### 3.    The *Johnson* Factors.

To determine whether a requested fee award is reasonable, courts in the Eighth Circuit may consider any or all of the twelve "*Johnson*" factors. *See e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018); *Johnson v. Ga.*

*Highway Express*, 488 F.2d 714, 717-20 (5th Cir. 1974). "[N]ot all of the individual *Johnson* factors will apply in every case, so the court has wide discretion as to which factors to apply and relative weight to assign to each." *In re Xcel Energy*, 364 F. Supp. 2d at 992. "[T]he ultimate reasonableness of the award is evaluated by considering relevant factors from the twelve [*Johnson*] factors." *Id*. In several recent cases, this District has most often applied the following *Johnson* factors in determining a reasonable attorneys' fee award: (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig*., 364 F. Supp. 2d 980, 992 (D. Minn. 2005)

## 4.    The Benefit Conferred Supports the Requested Fee and Expense Amount.

In considering a fee award, the "most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *In re Xcel Energy*, 364 F. Supp. 2d at 994. Here, Class Counsel's efforts pushed this case toward an early, positive resolution that benefits a nationwide class of blind and visually impaired individuals who will now be able to utilize Defendant's POS terminals safely, privately, and independently -- just as Defendant's sighted customers can. This excellent result, won on a nationwide basis, supports the requested fee and expense amount.

5.     **The Risks Faced by Plaintiffs' Counsel Support the Requested Fee and Expense Amount.**

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F. Supp. 2d at 994. Risks "must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *Id*. Such risks in complex class action litigation are very real. *See, e.g., Xcel Energy*, 364 F. Supp. 2d at 994 (stating that "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy"). As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

This case unquestionably involved risk, and the fact that the favorable ruling obtained by the undersigned in *Dalton v. Kwik Trip, Inc*., 21-CV-0098 (MJD/BRT) (Memorandum and Opinion, ECF 35) (D. Minn. Oct. 5, 2021) may have helped obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while prior decisions bolstered Plaintiff's position, no court of appeals has addressed these issues. Plaintiffs' counsel undertook this national class-action litigation on a wholly contingent basis, advancing all of its time and expenses while assuming the risk of no recovery.

6.      **The Novelty and Difficulty of the Issues Support the Requested Fee and Expense Amount.**

The pursuit of nationwide claims and relief in this case presented complex issues of law and fact and, to the best of the undersigned knowledge, this case is one of only a very select few that have sought and successfully achieved the relief obtained here. Additionally, the substantial benefits achieved in the Settlement are attributable solely to the efforts of Class Counsel, without the assistance of any government group. *See In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (absence of assistance from any government group supported district court's conclusion that the fee award to class counsel was fair and reasonable).

7.      **The Skill of Plaintiffs' Counsel, Defendant's Counsel, and the Efficiency in Handling the Case Supports the Requested Fee and Expense Amount.**

The "effort of counsel in efficiently bringing [the] case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved"). *See In re Xcel Energy*, 364 F. Supp. 3d at 995-96. As the Declaration of the undersigned submitted in connection with the motion for preliminary approval confirms, Plaintiff and the class are represented by experienced counsel who have particularized experience with ADA litigation. (*See* ECF 45). This expertise and experience resulted in this case being resolved after a remarkably short period of time, without engaging in protracted litigation, and in a way that provides truly significant nationwide relief for the class. In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to a conclusion with diligence and efficiency. *Yarrington v. Solvay Pharm., Inc.,* 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs'

counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class").

The quality of opposing counsel is also considered by courts in evaluating a fee request. *See, e.g., Yarrington*, 697 F. Supp. 2d at 1063 (finding the fact that defendants' attorneys, "consist[ing] of multiple well-respected and capable defense firms" which "consistently challenged Plaintiffs throughout the litigation," supported class counsel's fee request). Defendants were represented throughout the litigation by highly regarded counsel – King and Spalding. In the face of this experienced, formidable, and well-financed opposition, Plaintiffs' counsel was nonetheless able to successfully and efficiently prosecute a case that resulted in an excellent outcome for the class. This further supports the requested fee amount.

### 8.    <u>The Reaction of the Class and Significant Disability Rights Stakeholders Stockholders Supports the Requested Fee and Expense Amount.</u>

As discussed *surpa*, the lack of objections to the proposed class settlement strongly weighs in favor of approving the Settlement. The lack of objections also serves to underscore the fairness and reasonableness of Plaintiff's request. *See, e.g*., *Yarrington*, 697 F. Supp. 2d at 1064 (concluding "the Settlement Class strongly supports Settlement Class Counsel's request for attorneys' fees based on the fact that only one untimely objection was made"); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (noting that "careful consideration

of the merits of the seven [fee] objections and the minuscule number of total objections received in light of the size of the class" supports the fee award).

> **9.    A Comparison to Similar Cases Supports the Requested Fee and Expense Amount.**

An award of $65,000 is consistent with other awards in similar matters. *See, e.g.*, *Dalton, et. al. v. Dollar Tree Stores*, 23-CV-00368 (KMM/LIB) (Preliminary Approval Order, ECF 37) (D. Minn. May 30, 2024) and (Final Class Certification and Settlement Approval Order, ECF 50) (D. Minn. Feb. 3, 2025) (approving attorney fees to Plaintiff's counsel here of 70,000 in an essentially the same POS case as is at issue here); *Flynn v. Aimbridge Hospitality, LLC*, 17-CV-01649 (JFC) (W.D. Pa. Apr. 23, 2019) (ECF 41) (approving Plaintiff's counsel's estimate of $70,000 for the fees and costs of future ADA compliance monitoring work over a period of two years as "fair, reasonable and adequate")*; The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Trust*, 15-CV-00224 (YGR) (N.D. Cal. May 03, 2016) (ECF 75) (approving ADA class settlement which provided for ADA compliant transportation services at 127 hotels nationwide, and compliance and monitoring procedures, and $128,467.70 attorney's fees); *McDermott v. Kum & Go, LC*, Case No. 3:13-CV-00053 (CRW-HCA) (ECF 39) (S.D. Iowa Oct. 30, 2014) (ECF 39) (approving ADA class settlement requiring barrier removal at defendant's 400 facilities in 11 states which provided for compliance and monitoring procedures, and $137,500.00 in attorney's fees).

### 10.   The Service Award Sought For Ms. Dalton Is Fair And Reasonable.

Service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Yarrington*, 697 F. Supp. 2d at 1068. Service awards "are not intended to 'compensate' plaintiffs but instead serve to encourage people with legitimate claims to pursue the action." *Sauby v. City of Fargo*, No. 3:07-cv-10, 2009 WL 2168942, at *1 (D.N.D. July 16, 2009) (also upholding service awards of $5,000 and $10,000). Courts have recognized the oversight value that derivative and representative plaintiffs bring: "if there were no [individuals] willing to step forward and pursue a claim on behalf of other [class members], many violations of law might go unprosecuted." *In re Xcel Energy*, 364 F. Supp. 2d at 1000 (also approving service award of $100,000 to be distributed among eight lead plaintiffs).

Here, Plaintiff stood up for others like her and participated fully in all stages of this case, and courts have routinely awarded more than the modest $1,000 sought here for the commitments of others who exhibit that kind of courage. *See, e.g., Garcia v. Target Corp.*, No. 16-CV-2574-MJD-BRT, 2020 WL 416402, at *2 (D. Minn. Jan. 27, 2020) (approving $10,000 service award as "reasonable in light of the services performed . . . including taking on the risks of litigation, helping to achieve the compensation being made available to the Settlement class, and providing discovery"); *Bhatia v. 3M Co.*, No. 16- 1340 (DWF/DTS), 2019 WL 4298061, at *3 (D. Minn. Sept. 11, 2019) (awarding $25,000 service awards to two plaintiffs and $10,000 each to sixteen other class representatives); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14- 2522 (PAM), 2016 WL 2757692, at *2

(D. Minn. May 12, 2016) (awarding $20,000 to each of the five financial institution class representatives).

### III.    CONCLUSION

For the foregoing reasons, Plaintiff and the putative class respectfully request that the Court finally certify the class, appoint the undersigned as class-counsel, approve the Settlement, grant Class Counsel's Motion for Attorney's Fees, Costs, Expenses, and Service Awards, and enter judgment thereon.

Date: December 15, 2025

Respectfully submitted,

**THRONDSET MICHENFELDER, LLC**

*/s/ Patrick W. Michenfelder*
Patrick W. Michenfelder (#024207X)
Chad Throndset (#0261191X)
Jason Gustafson (#0403297)
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com
jason@throndsetlaw.com
*Attorneys for Plaintiff*